**IN THE UNITED STATES FEDERAL DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**RONALD MOORE, CAROL MOORE
CARVER, and INTOUCH ENTERPRISES,
LLC**                                                                        **PLAINTIFFS**

**VS.**                                              **CAUSE NO.: 1:15-cv-00013-DMB-DAS**

**MISSISSIPPI GAMING COMMISSION,
JOHN HAIRSTON officially and in his
individual capacity, NOLEN CANON officially
and in his individual capacity, WALLY
CARTER officially and in his individual
capacity, ALLEN GODFREY officially and in
his individual capacity, LYN CHAMBERS
officially and in his individual capacity,
EDWARD WILLIAMS officially and in his
individual capacity, LAKEITA F. ROX-LOVE,
officially and in her individual capacity, LEE
COUNTY, MISSISSIPPI, LEE COUNTY
SHERIFF JIM H. JOHNSON in his official
capacity, and OTHER UNKNOWN JOHN and
JANE DOES A-Z, also in their official and
individual capacity**                                                     **DEFENDANTS**

---

**SECOND AMENDED COMPLAINT**
***Jury Trial Requested***

---

**COME NOW,** the Plaintiffs, **RONALD MOORE, CAROL MOORE CARVER** and

**INTOUCH ENTERPRISES, LLC**, by and through counsel of record, and files this Second

Amended Complaint against the aforementioned Defendants.    The Defendant Gaming

Commission[1], its director, employees, agents ("the Gaming Commission Defendants") and others, having vowed to destroy the reputation of the Plaintiff, Ronald Moore, have gone to great lengths to accomplish that goal. The steps they have taken include: conducting "raids" under the color of law; the detainment and arrest of patrons for "gambling;" and the issuance of tickets only to dismiss the charges at a later date. Such actions and more were undertaken in an attempt to destroy the livelihood of the Plaintiffs. The Gaming Commission Defendants further conspired to "raid" the Plaintiffs' business establishments with the intent to confiscate money, personal property, books, and valuable computer equipment and to shut down the Plaintiff's lawful business operation; sometimes without search warrants at the time of the search and seizure. On other occasions, said Gaming Commission Defendants would obtain a search warrant and confiscate the aforementioned goods and property with no intention of ever returning the unlawfully seized goods. On more than one occasion, these Defendants would dismiss the Justice Court proceedings that they initiated and thereafter state they were without jurisdiction to order the return of the seized goods. As a matter of fact, no goods or funds stripped from the Plaintiff have ever been returned. Upon information and belief, the Gaming Commission Defendants have either placed the money into their "special funds" account or have personally retained it. Upon information and belief, the source of animosity harbored by the Gaming Commission stems from the fact that said Defendants were essentially unable to exercise authority over Plaintiff Moore's legitimate business. Plaintiff Moore designed his

---

[1] Miss. Code Ann. § 75–76–325 set up a "special fund" that was not a part of the state's general funds to collect and pay its debts. Upon information and belief, the Commission and the individual Defendants have obtained insurance through the Commission to indemnify for any claims made. Not only did they autonomously make the decision to obtain indemnification coverage, they paid for it out of the funds collected from the industry. The Commission can sue and be sued and, moreover, can threaten to sue entities or individuals. The Commission can and does maintain property -- both personal and real. The Commission has its own checking account in which it deposits monies that it collects and pays all expenses and debts from said accounts and with said funds. In effect, the Commission is a Mississippi agency in name alone. For all intents and purposes, it operates as a result of self-governance.

sweepstakes business model to be identical to the models used by businesses such as McDonald's, Walmart and Burger King. The legality of the Plaintiff's model was confirmed by Defendant Gaming Commission's expert. In fact, the Gaming Commission Defendants do not consider it in "their jurisdiction" to go after McDonalds, Walmart, Burger King and other similar businesses similarly situated as the plaintiffs. Further, they have refused to go after Fantasy Football, a multi-million dollar business with monetary pay outs each week. The Plaintiffs also aver that the Gaming Commission Defendants never actually attempted to prosecute or obtain indictments of the Plaintiffs until <u>after</u> the filing of this civil lawsuit. The only time the Gaming Commission Defendants partially pursued a charge on Plaintiff Moore was in 2007 in Justice Court in which he appeared to defend. The Defendants immediately dropped the charges but then refused to return the property and money (taken and withheld from the Plaintiff without any proper seizure action). Reasonably, the Plaintiffs believe that the state indictment and criminal charges recently filed were done solely to retaliate against the Plaintiffs for the instant civil lawsuit. In support of the same, the Plaintiffs state, aver and give notice of the following:

## <u>JURISDICTION</u>

### 1.

The Plaintiffs herein invokes the federal question jurisdiction of this Honorable Court pursuant to 28 U.S.C. Sections 1331 & 1343 to obtain a judgment for continuing damages suffered and sustained by the Plaintiffs, punitive damages, the costs of suit, including reasonable attorneys' fees. The Plaintiffs' damages continue to be caused by the Defendants' blatant violation of the Plaintiffs' due process, equal protection under the laws, rights, privileges and immunities as guaranteed by the Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States of America and by the applicable Federal statutes, more particularly, 42 U.S.C. Sections 1983, 1985 and 1986. Additionally, this Honorable Court has

jurisdiction to adjudicate the pendent or supplemental state claims including common law and Mississippi Constitution of 1890 claims that arose out of the same course of conduct giving rise to the principal claims of the Plaintiffs as herein stated.

## VENUE

2.

Venue is proper in this jurisdiction and district pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the real and immediate harm sustained by the Plaintiffs occurred in this judicial district and division.

## PARTIES

3.

The Plaintiff, **RONALD MOORE**, is an adult citizen of the United States of America and the State of Mississippi wherein he resides in the City of West Point, Clay County, Mississippi.  The injuries inflicted upon this Plaintiff were done at the hands of the Defendants in Clay County, Mississippi at 411 West Main Street, Suite D in West Point, MS 39773.

4.

The Plaintiff, **CAROL MOORE CARVER**, the daughter of Plaintiff Moore, is an adult resident citizen of the United States of America and the State of Mississippi wherein she resides in Clay County at P.O. Box 635, West Point, Mississippi 39773.  The injuries inflicted upon this Plaintiff were committed by the Defendant Gaming Commission and the Defendant Lee County Sheriff and its Department.

5.

The Plaintiff, **INTOUCH ENTERPRISES, LLC**, is a limited liability company that offers cell phones, cell phone accessories, computer accessories, international and domestic

4

phone cards, print and fax services in addition to hot and cold food. The Plaintiff is incorporated in the State of Mississippi with its physical address located at 411 West Main Street, Suite D, West Point, Mississippi 39773.

6.

The Defendant, **MISSISSIPPI GAMING COMMISSION**, is a political subdivision of the State of Mississippi. This Defendant may be served with process by effecting the same upon Allen Godfrey, Executive Director, 620 North Street, Suite 200 Jackson, Mississippi 39202.

7.

The Defendant, **JOHN HAIRSTON**, is an adult resident citizen of Harrison County, Mississippi. At all times material hereto this Defendant was a Commissioner of the Mississippi Gaming Commission, vested with the responsibility and authority to set policies and procedures, and enforce the policies and procedures adopted or otherwise implemented by and on behalf of the Defendant, Mississippi Gaming Commission. This Defendant is sued in his official and individual capacities. He may be served with lawful process at the Mississippi Gaming Commission or by effecting service upon his duly authorized designee, at the Mississippi Gaming Commission at 620 North Street, Suite 200, Jackson, Mississippi 39202.

8.

The Defendant, **NOLEN CANON**, is an adult resident citizen of Tunica County, Mississippi. At all times material hereto this Defendant was a Commissioner of the Mississippi Gaming Commission, vested with the responsibility and authority to set policies and procedures, and enforce the policies and procedures adopted or otherwise implemented by and on behalf of the Defendant, Mississippi Gaming Commission. This Defendant is sued in his official and individual capacities. He may be served with lawful process at the Mississippi Gaming

5

Commission or by effecting service upon his duly authorized designee, at the Mississippi Gaming Commission at 620 North Street, Suite 200, Jackson, Mississippi 39202.

9.

The Defendant, **WALLY CARTER**, is an adult resident citizen of Jackson County, Mississippi. At all times material hereto this Defendant was a Commissioner of the Mississippi Gaming Commission, vested with the responsibility and authority to set policies and procedures, and enforce the policies and procedures adopted or otherwise implemented by and on behalf of the Defendant, Mississippi Gaming Commission. This Defendant is sued in his official and individual capacities. He may be served with lawful process at the Mississippi Gaming Commission or by effecting service upon his duly authorized designee, at the Mississippi Gaming Commission at 620 North Street, Suite 200, Jackson, Mississippi 39202.

10.

The Defendant, **ALLEN GODFREY**, is an adult resident citizen of Madison County, Mississippi. At all times material hereto this Defendant was Executive Director of the Mississippi Gaming Commission, vested with the responsibility and authority to hire, train, supervise set policies and procedures, and enforce the policies and procedures adopted or otherwise implemented by and on behalf of the Defendant, Mississippi Gaming Commission. This Defendant is sued in his official and individual capacities. He may be served with lawful process at the Mississippi Gaming Commission or by effecting service upon his duly authorized designee, at the Mississippi Gaming Commission at 620 North Street, Suite 200, Jackson, Mississippi 39202.

11.

The Defendant, **LYN CHAMBERS**, is an adult resident citizen of Madison County,

Mississippi. At all times material hereto this Defendant was an agent employed by the Mississippi Gaming Commission. It is believed that this Defendant was an agent who was present at 411 East Main Street, Suite D in West Point, Mississippi on July 20, 2012 during the incident cited herein, and either assisted other Defendants or unknown persons with the intrusion and/or failed to intervene, and/or stop the intrusion while observing the same taking place in his presence when he had an affirmative duty to intervene, stop illegal conduct of other Defendants or unknown persons. His acts of omission or commission are vicariously attributed to the Mississippi Gaming Commission. He may be served with lawful process at his place of employment the Mississippi Gaming Commission. He is sued in his official and individual capacity.

12.

The Defendant, **EDWARD WILLIAMS**, is an adult resident citizen of Madison County, Mississippi. At all times material hereto this Defendant was agent employed by the Mississippi Gaming Commission. It is believed that this Defendant was an agent who was present at 411 East Main Street, Suite D in West Point, Mississippi on July 20, 2012 during the incident cited herein, and either assisted other Defendants or unknown persons with the intrusion and/or failed to intervene, and/or stop the intrusion while observing the same taking place in his presence when he had an affirmative duty to intervene, stop illegal conduct of other Defendants or unknown persons. His acts of omission or commission are vicariously attributed to the Mississippi Gaming Commission. He may be served with lawful process at his place of employment the Mississippi Gaming Commission. He is sued in his official and individual capacity.

13.

The Defendant, **LAKEITA F. ROX-LOVE**, is an adult resident citizen of the State of Mississippi. This Defendant is currently the Special Assistant Attorney General in the Gaming Division of the Office of the Attorney General of the State of Mississippi. It is believed that this Defendant was responsible for the unlawful dissemination of Plaintiff Ronald Moore's Social Security Number in the publicly accessible Court documents. Further, it is believed this Defendant failed to properly move to dismiss the claims against Plaintiff Ronald Moore as there was no Certificate of Service attached to said Motion. Moreover, this Defendant failed to notify Plaintiff Moore of the Motion and subsequent Order dismissing all charges against him, both filed on February 3, 2015, until nearly one week later on February 9, 2015 through registered mail. This Defendant had a legal obligation to keep confidential Plaintiff Moore's Social Security Number and to expeditiously inform him of the State's actions in dismissing the claims against him. Upon information and belief she conspired with the other Defendants to purposefully expose and intentionally cause the Plaintiff to be subjected to identity theft. She may be served with lawful process at her place of employment, the Office of the Mississippi Attorney General, Gaming Division. She acted outside the scope of her employment, purposefully, and knowingly by engaging in the actions set forth above. She is sued in her official and individual capacity.

14.

The Defendant, **LEE COUNTY, MISSISSIPPI**, is a political subdivision of the State of Mississippi and is the entity responsible for the oversight and funding of the Lee County Sheriff's Department. This Defendant may be served with process by effecting the same upon the Chancery Clerk of Lee County.

15.

The Defendant, **LEE COUNTY SHERIFF JIM H. JOHNSON**, is an adult resident citizen of Lee County, Mississippi. At all times material hereto, Jim H. Johnson was the duly elected Sheriff of Lee County, Mississippi and has been since 2004. The Sheriff of Lee County, Mississippi is vested with the authority to provide protection to the citizens of Lee County, Mississippi. It is believed that this Defendant was responsible for the wrongful targeting of Plaintiff Carol Carver on its "Top Ten List" after being instructed by Defendant Gaming Commission and for the purpose of attacking Plaintiff Moore. This Defendant may be served with lawful process at his place of employment, the Lee County Sheriff's Department at 510 N. Commerce Street in Tupelo, Mississippi 38804. He is being sued in his official capacity.

16.

The Defendants', **JOHN AND JANE DOES A-Z**, identities are not known to the Plaintiffs at this time. However, it is believed that their true and accurate identities will become known through the discovery process and at that time the Plaintiffs will seek leave of this Honorable Court to amend his Complaint and to specifically name the unknown persons as Defendants to this action and serve them with process for wrongs committed and violations against the rights, privileges and immunities of the Plaintiffs, all of which it is alleged were committed in their official and individual capacities, as employees of the Mississippi Gaming Commission, the State of Mississippi , other State or Municipal entities and/or other individuals acting in concert with such person, persons or state entities named as Defendants herein or who may be discovered to have acted in a manner detrimental to the rights, privileges and immunities of the Plaintiffs.

## **FACTS**

17.

As an initial matter, the Plaintiff avers and gives notice of the lack of formal discovery as of this point in the instant action. Therefore, the parties, actions/inactions and causes of action are asserted herein based on the facts and information available to the Plaintiff as of the date of filing of this Second Amended Complaint and in conjunction with Fed. R. Civ. P. 8.

18.

On August 23, 2014, Plaintiff Ronald Moore was indicted by a grand jury in Lee County, Mississippi on five (5) counts, which included racketeering and several gambling violations. On September 23, 2014, the Gaming Commission Defendants (i.e., the Commission, Hairston, Canon, Carter, Godfrey, Chambers, and Williams) procured an arrest warrant for Plaintiff Moore. This led to his arrest on October 16, 2014, which was merely a cover to unlawfully retain his property and destroy the Plaintiffs' business. Plaintiff Moore was never charged after the two (2) prior raids, described below. Plaintiff Moore's arrest is yet another instance of the tortious actions directed at and committed upon the Plaintiffs and which have been continuing and ongoing over the last several years.

19.

Over the years, the Gaming Commission Defendants have seized hundreds of thousands of dollars in equipment, cash and other property on the grounds that the Plaintiffs were allegedly engaging in "illegal gaming activity" and yet, despite such accusations, have, until recently, either dropped or declined to pursue any criminal charges against Plaintiff Moore in this regard. The Gaming Commission Defendants would instigate "raids" on the premises of the Plaintiffs. During these "raids," the Gaming Commission Defendants would go in, take money, computers,

personal property in the hundreds of thousands of dollars without due process of law as required by the United States and State of Mississippi Constitutions and would never, to date, return any of the items nor would they charge the Plaintiffs with any criminal or civil offense. Because the Plaintiff was not in violation of the applicable statute, the Gaming Commission Defendants engineered a plan to modify the statute. Even with the slight modification in the statutory language, the activities taking place on the Plaintiffs' business premises were not declared illegal. Despite repeated attempts to get the Gaming Commission Defendants to observe the legality of their operations, the Gaming Commission Defendants have refused all such invitations to view the legitimate and legal operations of the Plaintiffs' business and have never even charged any one of the customers who use the establishment with any violation. Furthermore, the Gaming Commission Defendants have refused to acknowledge opinions by third-parties utilized and respected by the Defendants and the gaming community that Plaintiffs' operations were within the law, as well as agreement by local law enforcement that said operation was legitimate and lawful. Moreover, the Gaming Commission Defendants have obstinately refused to yield their unsupported position that Plaintiff Moore is maintaining an illegal gaming operation and have continued to harass and unlawfully take the property of the Plaintiffs without due process of law in an ongoing attempt to prevent the Plaintiffs from conducting lawful business within the State.

20.

Beginning on September 12, 2007, the Gaming Commission Defendants engaged in a pattern of unlawful disruptive behavior and harassment of Plaintiff Moore on their unfounded and mistaken belief that the Plaintiffs were operating illegal gaming operations at the Paradise Isle Internet Café in West Point, Mississippi. On September 12, 2007, the Gaming Commission

11

Defendants, through their agents, served a search warrant on the Paradise Isle Internet Café, seizing forty (40) computers, a computer server and a digital recorder on the grounds that said machines were illegal gaming machines.  The Gaming Commission Defendants initiated the raid by simply entering the premises and boxing up computers, and only produced a warrant upon request by the Plaintiff's attorney at a later time.  Regarding the grounds of their contention that the machines were illegal, the seizing agents stated that it "would be for the courts to decide."

21.

Plaintiff Moore was subsequently charged with thirty-nine (39) counts of violation of Section 75-76-55(1)(a) of the Mississippi Code of 1972.  At said trial date, the Gaming Commission Defendants, through the County Prosecutor, requested more time in which to obtain evidence for possible felony charges against the Plaintiff, which was granted by the Courts.  The Gaming Commission Defendants also requested that the misdemeanor charges against the Plaintiff be dismissed without prejudice.  The Justice Court of Clay County, Mississippi dismissed said charges on October 18, 2007 and stated that the "warrant" was not proper or valid.  With the criminal charges dropped, the Plaintiff requested the return of the seized property.  The Gaming Commission refused, and on November 1, 2007, the Justice Court of Clay County ordered the return of the seized items to the Plaintiff.  Although the Gaming Commission Defendants issued warrants for the seizure of the forty (40) computers through the Justice Court of Clay County, they appealed the Justice Court's decision, stating that the Court did not have jurisdiction to order the return of the seized computers.  The Circuit Court of Clay County, Mississippi and the Mississippi Court of Appeals reversed the decision of the Justice Court upholding the seizure of the computers and other equipment.  Despite the stated intention to retain the computers for the purposes of analyzing them to explore felony charges against the

Plaintiff, said charges were never filed.

22.

In the ruling of the Circuit Court of Clay County, Mississippi upholding the Gaming Commission's seizure of the Plaintiff's computers, the Court made several conclusions regarding the reasons why the Court believed that the seized machines were illegal. The court stated as follows:

1) The phone cards sold by the store are legitimate phone calling cards that can be lawfully used and sold.
2) The computer terminals by themselves are not contraband *per se*
3) The swiping of the telephone card is apropos to the insertion of tokens or similar items.
4) The use of the phone calling cards in conjunction with the computer terminals changes the status of the computers.

In response to the Circuit Court's Order, the Plaintiff made several changes to his equipment to conform to the Court's Order. The Plaintiff contacted the Gaming Commission Defendants stating compliance with the Court's Order and then invited them to come observe their machines and their compliance with the law. The Gaming Commission Defendants declined.

23.

On July 20, 2012, despite being given the opportunity to observe the conformity of the Plaintiffs' machines with applicable law, the Gaming Commission Defendants executed another raid on the Plaintiffs' business premises. Commission employees, including Defendant Chambers and Defendant Williams, with no local law enforcement, came onto the premises and ordered everyone in the store to remain on the premises and refused to allow anyone to leave the premises, effectively placing everyone under arrest. The Gaming Commission Agent Defendants proceeded to issue violation notices to each customer in the store citing Mississippi

13

gaming laws. Only after each customer provided personal identification and were given the citations were they allowed to leave. In requesting the search warrant, Plaintiffs observed that the facts underlying the warrant cited "underlying circumstances in Exhibit "A." The warrant shown to the Plaintiffs did not contain an Exhibit "A" and Plaintiffs have yet to see these "underlying circumstances." When Plaintiff Moore requested the list of "underlying circumstances," the agent for the Gaming Commission Defendants refused. Again, similar to the 2007 raid, criminal charges were not pursued by the Gaming Commission Defendants. The Plaintiff and those Defendants arrived at a subsequent court appearance at the Justice Court of Clay County, Mississippi and the Court stated that none of the citations issued to individuals present in the store during the July 2012 raid had been turned in to the Court. Thereafter, as was the case in 2007, criminal charges were not pursued against anyone. Despite this fact, the Gaming Commission Defendants again retained hundreds of thousands of dollars' worth of the Plaintiffs' equipment and refused to return said equipment, again citing their "ongoing investigation" as they did in 2007.

24.

Following the raid, the Plaintiffs again attempted to work with the Gaming Commission Defendants by stating the reasons why the Plaintiffs believed their machines were in conformity with applicable Mississippi law. Furthermore, on or about June 6, 2013, the Plaintiffs sent a letter to the Gaming Commission Defendants again inviting them to observe the Plaintiffs' operation as well as a demonstration of the Plaintiffs' "sweepstakes system." Once more, the Gaming Commission Defendants declined. As a result of the money and other property taken by them during the July 2012 raid, the Plaintiffs were forced to close their business for several months.

14

25.

In December of 2013, the Plaintiffs had again re-opened their business premises, under the name of Intouch Enterprises, LLC, and operated phone card sweepstakes machines that were in accordance with the Order issued by the Clay County Circuit Court and applicable Mississippi law. On December 5, 2013, the Gaming Commission Defendants once again raided the premises of the Plaintiffs, and immediately began seizing and boxing up the Plaintiffs' computers, cash and other equipment. As was the case in the two (2) prior raids, the Defendants did not bring any criminal charges against Plaintiff Moore and continued to hold the Plaintiffs' property with no intention of returning said property. In local news articles, agents of the Gaming Commission stated that said raid was precipitated by "calls from the public," apparently from callers that were "savvy with the law" but in the same article went on to say that the Mississippi Gaming Commission "rarely goes in an establishment based off of hearsay."

26.

All of the Defendants including the Gaming Commission, its board members individually, its executive director Jeffery Godfrey and its attorney Lakeita Rox-Love conspired to violate the Constitutional rights, both under the Mississippi and Federal constitutions, in an effort to deprive the liberties and rights of Plaintiffs Ronald Moore and his daughter, Carol Moore Carter, to destroy Plaintiff Moore's business, to destroy their reputations, and to inflict emotional distress by charging them criminally and forcing Plaintiff Moore to forego all property, monies, causes of action available to him by charging his daughter, Carol Moore Carver with Racketeering under Miss Code Ann. § 37-3-45 as an employee on February 2, 2015.

27.

The Plaintiffs have attached several exhibits which underscore the recent activity

perpetrated by all of the Defendants. For example, the Gaming Commission Defendants, by means of a defective search warrant, executed a search on Plaintiff Moore's business. *See* Search Warrant attached hereto as Exhibit "A." In executing the search on the wrong premises, the Gaming Commission Defendants inventoried a lengthy list of items wrongfully seized from the Plaintiff's legitimate business. *See* Inventory attached hereto as Exhibit "B." The Gaming Commission Defendants thereafter wrongfully pursued indictment of Plaintiff Moore. *See* Indictment of Moore attached hereto as Exhibit "C." After the indictment of Plaintiff Moore, the Lee County Defendants, in an attempt to defame the Plaintiffs' reputations, indicted his daughter, Carol Moore Carver. This indictment was signed by Lakeita Rox-Love and was, as the Plaintiffs believe, an attempt to put further pressure on Plaintiff Moore. Thereafter on February 3, 2015, the Gaming Commission Defendants, through Attorney Rox-Love, moved to dismiss the criminal charges against Plaintiff Moore and wrongfully included his full, un-redacted Social Security Number on the Motion, thereby infringing upon his right to privacy of said information and in violation of 26 U.S.C. § 7213. Said Motion was granted that same day. *See* Cover Letter, Motion and Order attached hereto as Exhibit "D." Plaintiff Moore did not receive said Order until nearly one (1) week later, on February 9, 2015.

28.

Recently, Plaintiff Carver was included on Defendant Lee County Sheriff's Most Wanted List, presumably in an effort to cause harm to Plaintiff Moore and his family through by whatever means necessary. *See* Most Wanted Photo attached hereto as Exhibit "E."

29.

Upon information and belief, Defendant Mississippi Gaming Commission is not an "arm of the state" for purposes of Eleventh Amendment immunity and is not entitled to such

immunity. Miss. Code Ann. § 75-76-81 states that the funds used by the Mississippi Gaming Commission come from a "special fund" which consists of monies specifically designated for use by the Mississippi Gaming Commission and no other organization. The statute also states that any remaining or unused monies at the end of the fiscal year are not to be transferred or allocated to the State of Mississippi's general fund but, rather, shall remain in the "special fund" to gain interest and to be used solely by the Defendant Gaming Commission at a later date when necessary. No funds derived from the Defendant Gaming Commission interfere or take from the funds of the State of Mississippi -- the most vital aspect of Eleventh Amendment immunity. Further, Miss. Code Ann. § 75-76-325(1) mandates that no state general funds shall be used. In addition, Miss. Code Ann. § 75-76-29(3) mandates that Defendant Gaming Commission is, as a matter of fact, self-governing considering it has "absolute power and authority" over gaming licenses and other gaming issues, including enforcement. Moreover, Defendant Gaming Commission has the authority to investigate potential lawsuits and "sue and be sued on behalf of the commission" pursuant to Miss. Code Ann. §§ 75-76-17(2) and 75-76-21(1)(a) and has the independent authority to "[a]cquire real property in accordance with statutory procedure and make improvements thereon on behalf of the commission" pursuant to Miss. Code Ann. § 75-76-21(1)(b).

30.

As a result of the Defendants' continuing and unending unlawful campaign against the Plaintiffs, the Plaintiffs have suffered damages in the <u>hundreds of thousands of dollars</u> in property and assets lost in the raids, damage to their reputation in the community and now Plaintiff Moore faces the real possibility of unlawful imprisonment for a crime he did not commit. It is further believed that the Gaming Commission Defendants continue to exceed their

jurisdictional limits and have no authority to do what they did to the Plaintiffs over the course of several years and continue to do presently.  Plaintiff Moore has also had to expend resources in the form of attorney's fees to fight the charges wrongfully asserted against him as well as bond money to ensure his release from incarceration in amount exceeding thirty-two thousand dollars ($32,000.00).

<u>**COUNT I**</u>:
**ACTION FOR DEPRIVATION OF CIVIL RIGHTS**
**(42 U.S.C. SECTION 1983)**

31.

The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing Fact section which serves as the basis for the instant claim.

32.

At all times material hereto, the Defendants were vested with the state authority and the non-delegable responsibility and duty of adhering to, complying with and enforcing the laws of the United States of America and the State of Mississippi.  Consequently, while acting under color of state law, all of the Defendants in a joint venture commenced to engage in a course of illegal conduct and to implement a policy, custom, usage, plan, or practice wherein the rights, privileges or immunities of the Plaintiffs were violated.  Specifically, the Gaming Commission Defendants and the Lee County Defendants, jointly and severally, engaged in a course of conduct that resulted in the violation of the Plaintiff's right to unreasonable search and seizure laws of the United States of America pursuant to the Fourth Amendment to the Constitution of the United States of America and the corresponding provisions of the Constitution of the State of Mississippi.  The Gaming Commission Defendants, through their actions described above, have also taken and retained the property of the Plaintiffs without due process of law in violation of

the rights pursuant to the Fourteenth and Fifth Amendments of the Constitution of the United States of America.

33.

The violations of the laws and Constitutions of the United States and the State of Mississippi complained of in this Complaint include, but are not limited to, right to be secure in your place and person, deprivation of identifiable civil rights, i.e., life, liberty and/or property without due process of law, and the search and seizure of the Plaintiffs' property without probable cause resulting in damages to the Plaintiffs such as the loss of valuable property, damage to reputation, as well as mental and emotional distress.

34.

As a direct and proximate consequence of the Gaming Commission and the Lee County Defendants' actions, the Plaintiffs were deprived of certain rights, privileges and immunities secured by the Constitution of the United States of America, the laws of this Nation and the State of Mississippi; specifically, the Fifth and Fourteenth Amendment Rights against the deprivation of life, liberty and property without due process of law and Fourth Amendment Right against unreasonable search and seizure.

35.

At all times material hereto, the Lee County and Gaming Commission Defendants and their agents, representatives and employees acted pursuant to the policies, regulations, and decisions officially adopted or promulgated by those persons whose acts may fairly be said to represent official policy of or were pursuant to governmental custom, usage or practice of the Defendants. These Defendants were engaged in joint venture for profit.

19

36.

It is further averred that the Defendants John Hairston, Nolen Canon, Wally Carter, Allen Godfrey, Lyn Chambers, Edward Williams and/or others were the governmental officials whose edicts or acts may fairly be said to represent official policy, practices, customs or regulations of the Defendant Mississippi Gaming Commission. The aforementioned Defendants collectively and individually developed, planned and implemented the policy, custom and/or usage that resulted in the injuries of the Plaintiffs.

37.

As a direct and proximate consequence of the Gaming Commission Defendants' conduct wherein such Defendants deprived, and continue to deprive, Plaintiffs of certain rights guaranteed by the Constitution of the United States of America, Plaintiff Moore suffers immediate and irreparable injury to his person resulting in the deprivation of constitutional rights, privileges and immunities, compensatory damages in the amount of property taken from Plaintiffs' premises by the Defendants, loss of past and future business opportunities, damages to Plaintiffs' reputation, attorney's fees, and mental and emotional distress. Also, the Defendant Gaming Commission and its agents, through their influence on the Lee County Sheriff's Department and the Lee County Sheriff's Department, on its own, have begun a campaign of intimidation and harassment directed at Plaintiff Carver, Plaintiff Moore's daughter. This has already resulted in Plaintiff Carver's wrongful arrest, which occurred after Lee County Sheriff's Department wrongfully included Plaintiff Carver on their "Most Wanted List."

**COUNT II**:
**ACTION FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**(42 U.S.C. SECTION 1985)**

38.

The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing Fact section which serves as the basis for the instant claim.

39.

The Gaming Commission Defendants conspired with one another to ignore the clear evidence that the Plaintiffs' operations were in accordance with Mississippi law and agreed to take action and took action in furtherance of said agreement to deprive the Plaintiff of his liberty and property through the unlawful search and seizure of Plaintiffs' premises and property without sufficient probable cause that the Plaintiffs were committing unlawful acts. The Gaming Commission Defendants agreed on a course of conduct and took a course of action to unlawfully harass the Plaintiffs through multiple unlawful and unjustified "raids" in which criminal charges were brought and ultimately dropped or never pursued for the clear purpose of causing the Plaintiffs to shut the business down and for the Plaintiffs to suffer irreparable damage to his reputation as a business owner.

40.

Further, both the Gaming Commission and Lee County Defendants conspired to violate the civil rights of Plaintiff Carol Moore Carver when they sought to wrongfully arrest her for an illegitimate RICO charge. Plaintiff Carver has only recently been released from custody. The Defendants sought to defame and arrest Plaintiff Carver with the sole intention to put pressure on Plaintiff Moore in order to cause him additional and suffering and damage to his livelihood.

21

41.

There exists at the Mississippi Gaming Commission a belief, practice, usage and/or custom that it is perfectly fine to disregard the Constitution of the United States.

<u>**COUNT III**</u>:
**FAILURE TO ADEQUATELY TRAIN & SUPERVISE EMPLOYEES**

42.

The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing Fact section which serves as the basis for the instant claim.

43.

Defendant Mississippi Gaming Commission failed to provide adequate and competent training and/or supervision to its employees and agents regarding the rights of individuals subject to search and seizure of property, the definition of "probable cause" for a search and seizure of property and other conduct in the furtherance of "raids" more typically undertaken by adequately trained local law enforcement and in communicating and working with the Plaintiffs and other citizens of Mississippi regarding compliance with the laws of Mississippi. The Defendants are (and at the time of the injuries) tasked with the non-delegable duty and responsibility to formulate, oversee and implement official policies, procedures, practices and customs that were to be carried out by all employees.

44.

As a direct and proximate consequence of the aforementioned Defendants' failure to properly develop, implement and otherwise devise a policy of adequate training and/or supervision for its Officers/Agents, the Plaintiffs were deprived of certain constitutional rights, privileges and immunities which, if properly trained and supervised, every Officer within the employ of the Mississippi Gaming Commission would have known, and the corresponding

deprivation of civil rights, privileges and immunities would not have happened.

45.

Failure to provide adequate training and supervision was so grossly negligent that it amounted to a deliberate indifference and blatant disregard for the rights, privileges and immunities of the Plaintiff, and any other person or persons similarly situated. Thus, because of the failure to adequately train and supervise, the aforementioned Defendants are liable for Plaintiff's injuries, damages and the deprivation of civil rights associated therewith.

46.

Additionally, the Lee County Defendants failed to adequately train and supervise their employees and deputies such that they allowed the wrongful arrest and detention of Plaintiff Carver in an attempt to put pressure on Plaintiff Moore regarding his alleged violations of Mississippi gambling laws. Such gross negligence caused Plaintiff Carver to suffer mental and emotional distress, physical suffering and the associated deprivation of her civil rights.

**<u>COUNT IV</u>:**
**CIVIL CONSPIRACY**

47.

The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing Fact section which serves as the basis for the instant claim.

48.

The Gaming Commission and Lee County Defendants, in jointly pursuing their years-long unlawful campaign against the Plaintiffs, conspired to violate the Mississippi and Federal Constitutions to deprive Plaintiff Moore of his freedom and personal property; property which, to date, has not been rightfully returned to Plaintiff Moore. Both sets of Defendants also conspired to violate the Mississippi and Federal Constitutions when they pursued Plaintiff Carver for false

charges relating to the RICO Act.

49.

On the dates in question the Defendants, acting in concert with one another entered into an agreement, expressly or by implication through their joint participation to engage in conduct that was wrongful, intentional, willful and wanton and designed to deprive the Plaintiffs of their liberty, property and other rights guaranteed under the Constitution and designed to damage the Plaintiffs in their reputation as business owners in their local community. The Gaming Commission Defendants furthered their agreement by conducting unlawful and unjustified "raids" against the Plaintiffs in which the Plaintiffs' property was seized with resulting trumped-up criminal charges that in every instance were either dropped or never pursued as underscored by the Gaming Commission Defendants' recent dismissal of charges. *See* Exhibit "D." The Defendants' conduct was illegal and amounted to a civil conspiracy against the Plaintiffs.

50.

As a direct and proximate consequence of the conduct of the aforementioned Defendants, both known and unknown, the Defendants are jointly and severely liable to the Plaintiffs for the civil conspiracy to engage in conduct they knew or reasonably should have known was against the law and the public policy of this State. Thus, the Plaintiffs are entitled to a money judgment against the Defendants who engaged in or contributed to or otherwise facilitated through their acts of omission or commission this civil conspiracy against the Plaintiffs.

**COUNT V**:
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

51.

The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing Fact section which serves as the basis for the instant claim.

24

52.

All of the Defendants' conduct was designed to inflict emotional and mental anguish and distress on the dates in question. The manner, method and design of all of the Defendants' outrageous conduct caused Plaintiff Moore and Plaintiff Carver to endure, both in the past and presently, enormous emotional and mental distress and anguish. Such conduct included numerous unjustified raids on Plaintiff Moore's lawful business, what amounted to stealing his costly equipment and livelihood, refusal to return said property, defamatory statements published to the press that damaged the reputations of both Plaintiff Moore and Plaintiff Carver, and the arrest of both Plaintiff Moore and Plaintiff Carver in addition to purposeful lack of redaction of the Plaintiff's social security number and the delay in allowing him to receive notice of the Gaming Commission Defendants' new motion to dismiss.

53.

As a direct and proximate consequence of the outrageous conduct of the aforementioned Defendants, both known and unknown, the Defendants are jointly and severally liable to the Plaintiffs for the intentional infliction of emotional distress and mental anguish inflicted upon the Plaintiffs. Thus, the Plaintiffs are entitled to a money judgment against the Defendants who engaged in or contributed to or otherwise facilitated through their acts of omission or commission such outrageous conduct perpetrated upon the Plaintiffs.

**COUNT VI**:
**CONVERSION**

54.

The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing Fact section which serves as the basis for the instant claim.

55.

25

In seizing the property of the Plaintiffs on multiple occasions without sufficient probable cause and retaining and refusing to return said property without sufficient justification, the Gaming Commission Defendants, acting in concert, have wrongfully and intentionally exercised domain over the property of the Plaintiffs in defiance of the Plaintiffs' rights in said property. The Gaming Commission Defendants have continued to detain Plaintiffs' property after Plaintiffs' repeated demands for the return of said property.

56.

As a result of said intentional acts, the Plaintiffs have suffered extreme damages in the form of loss of use of the said property, loss of profits derived from the use of said property, as well as the value of said property converted.

## COUNT VII:
## INVASION OF PRIVACY

57.

The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing Fact section which serves as the basis for the instant claim.

58.

The Gaming Commission Defendants also violated the Plaintiffs' rights to privacy by conducting the various raids upon Plaintiff Moore's legitimate businesses as well as publicly and libelously decrying the Plaintiff's businesses.  Further, Defendant Rox-Love published the Plaintiff's Social Security Number when she had a duty to keep such information private.  In publishing his Social Security Number, the Defendants, through Attorney Lakeita Rox-Love, disclosed, without any redaction, private information belonging solely to the Plaintiff and was not of a public nature.  This action alone is in violation of 26 U.S.C. § 7213.

59.

26

Further, the disclosure of said Social Security Number is considered reasonably and objectively offensive to any ordinary person, especially one such as Plaintiff Moore considering he is a businessman and such disclosure could likely subject him to identity theft, credit damage, etc. Furthermore, when the Gaming Commission Defendants acted to raid and close the Plaintiff's business and made corresponding statements to the media portraying the Plaintiff as a criminal, they portrayed him in a false light considering the allegations lodged against the Plaintiff are untrue and are known to be untrue by the Gaming Commission Defendants. Such false information has been widely disseminated and has been given much publicity, thereby resulting in damage to the Plaintiff's reputation and livelihood. As a result of this action, Plaintiff Moore has suffered lost income, wages, and severe emotional distress.

60.

Plaintiff Carver has also been victim of the Gaming Commission Defendants', acting in concert with Lee County Defendants, attempts to disrupt Plaintiff Moore's business and livelihood. She was unfairly and unlawfully portrayed in a false light to her fellow citizens of Lee County and elsewhere through her wrongful inclusion on Lee County Sheriff's Department Most Wanted List. *See* Exhibit "E." She has also been arrested and, as a result, was forced to expend resources to bail herself out of jail and to hire an attorney to ensure that her freedom is not further deprived wrongfully. She has suffered lost income, damage to her reputation and severe emotional distress as a result of the Defendants' actions.

## **COUNT VIII**:
## **LIBEL**

61.

The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing Fact section which serves as the basis for the instant claim.

62.

As stated above, the Gaming Commission Defendants also published false statements about the Plaintiffs when they spoke with local news agencies and stated that Plaintiff Moore's raid was precipitated by "calls from the public," apparently from callers that were "savvy with the law" but in the same article went on to say that the Mississippi Gaming Commission "rarely goes in an establishment based off of hearsay."  Such action by the Gaming Commission Defendants, publishing a false statement about Plaintiff Moore to news outlets, certainly damaged his reputation in his community as it was disseminated to news outlets throughout the area.

63.

The Lee County Defendants also committed libelous acts against Plaintiff Carver when they included her picture and false charges on their Most Wanted website.  Such information is undoubtedly damaging to her reputation and was published on various websites on the internet, thus communicating said information to an expansive amount of readers.

64.

Both Plaintiffs have, as a result, suffered damages to their reputation, have lost wages/income and have suffered severe mental and emotional anguish and distress.

**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiffs pray that the Court enter a judgment in favor of the Plaintiffs and against all of the Defendants, jointly and severally, for the actual or compensatory and presumed damages, to include both pre- and post-judgment interest, sustained by the Plaintiffs pursuant to 42 U.S.C. Sections 1983, 1985, 1986, the Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States of

28

America and Mississippi and for the violation of numerous pendent or supplemental state claims arising out of the same set of facts from which the deprivation of civil, constitutional and human rights arose for the deprivation of such constitutional rights, personal injury, infliction of emotional distress, mental anguish and any other injury or claim that may be discovered during the discovery process for which the law holds the Defendants liable and responsible in an amount to be determined by a jury.

Plaintiffs additionally request a judgment in favor of the Plaintiffs and against the Defendants, jointly and severally, for punitive or exemplary damages, for the outrageous, willful, wanton and intentional conduct that resulted in a gross or reckless disregard for the welfare, safety, rights, privileges or immunities of the Plaintiffs in an amount to be determined by the jury.

Further, the Plaintiffs requests a judgment in favor of the Plaintiffs and against the Defendants, jointly and severally, for the Plaintiffs' reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988, all costs of this action and related litigation expenses and expert fees; a judgment for such other relief, general or specific, as the Court may deem appropriate, just and equitable in the premises.

**THIS** the 16th day of November, 2015.

Respectfully submitted,
**RONALD MOORE, CAROL MOORE
CARVER** and **INTOUCH ENTERPRISES,
LLC,** Plaintiffs
BY: ___/s/ *Chuck McRae*_____
CHUCK McRAE, MSB #2804

CHUCK McRAE, MSB #2804
SETH C. LITTLE, MSB #102890
McRAE LAW FIRM, PLLC
416 EAST AMITE STREET
JACKSON, MISSISSIPPI 39201
Office: 601.944.1008

## CERTIFICATE OF SERVICE

I, Chuck McRae, hereby certify that I have this day filed a true and correct copy of the above and foregoing with this Court's electronic filing system which automatically sends notification to all Counsel of Record.

**THIS** the 16th day of November, 2015.

/s/ Chuck McRae
Chuck McRae, MSB #2804

CHUCK McRAE, MSB #2804
SETH C. LITTLE, MSB #102890
McRAE LAW FIRM, PLLC
416 EAST AMITE STREET
JACKSON, MISSISSIPPI 39201
Office: 601.944.1008
Facsimile: 866.236.7731
Email: chuck@mcraelaw.net
        seth@mcraelaw.net